# Exhibit B

STATE OF CALIFORNIA
AUTHENTICATED
ELECTRONIC LEGAL MATERIAL

## Assembly Bill No. 979

## CHAPTER 316

An act to amend Section 301.3 of, and to add Sections 301.4 and 2115.6 to, the Corporations Code, relating to corporations.

[Approved by Governor September 30, 2020. Filed with
Secretary of State September 30, 2020.]

LEGISLATIVE COUNSEL'S DIGEST

AB 979, Holden. Corporations: boards of directors: underrepresented communities.

Existing law, no later than the close of the 2019 calendar year, requires a publicly held domestic or foreign corporation whose principal executive office is located in California to have a minimum of one female director on its board. Existing law, no later than the close of the 2021 calendar year, additionally requires such a corporation with 5 directors to have a minimum of 2 female directors and such a corporation with 6 or more directors to have a minimum of 3 female directors. Existing law authorizes the Secretary of State to impose fines for violations of these provisions, as specified, and requires the moneys from these fines to be available, upon appropriation, to offset the cost of administering these requirements.

This bill would require, no later than the close of the 2021 calendar year, such a corporation to have a minimum of one director from an underrepresented community, as defined. The bill would require, no later than the close of the 2022 calendar year, such a corporation with more than 4 but fewer than 9 directors to have a minimum of 2 directors from underrepresented communities, and such a corporation with 9 or more directors to have a minimum of 3 directors from underrepresented communities.

Existing law requires, on or before specified dates, the Secretary of State to publish various reports on its internet website documenting, among other things, the number of corporations in compliance with these provisions.

This bill would require, on or before specified dates, the Secretary of State to include in those reports certain information, including, among other things, the number of corporations in compliance with the bill's provisions. The bill would authorize the Secretary of State to impose fines for violations of the bill's provisions, as specified, and would require the moneys from these fines to be available, upon appropriation, to offset the cost of administering these requirements.

This bill would make related findings and declarations.

92

*The people of the State of California do enact as follows:*

SECTION 1.   The Legislature finds and declares as follows:

(a)  According to the United States Bureau of Labor Statistics, only 31 percent of African Americans and 22 percent of Latinos worked in management, professional, and related occupations while 54 percent of Asians and 41 percent of Whites worked in the same occupation.

(b)  According to 2018 data from Deloitte and the Alliance for Board Diversity, the percentages of Fortune 500 company board seats held by people identified as African American/Black, Hispanic/Latino(a), and Asian/Pacific Islander were 8.6 percent, 3.8 percent, and 3.7 percent, respectively.

(c)  The United States Bureau of Labor Statistics also reported that in the year 2019, 90 percent of chief executives were White.

(d)  According to the Latino Corporate Directors Association, there are 662 publicly traded companies headquartered in California. Two hundred thirty-three of these companies have all White boards of directors as of this year.

(e)  Data from the Latino Corporate Directors Association also shows that in the boards of these 662 publicly traded companies, only 13 percent have at least one Latino board member, 16 percent have at least one African American board member, 42 percent have at least one Asian board member, and 6 percent have at least one non-White or Other board member as of May 2020. In contrast, 100 percent of these boards have at least one White board member.

(f)  According to United States Equal Employment Opportunity Commission (EEOC), "employment in computer science and engineering is growing at twice the rate of the national average. These jobs tend to provide higher pay and better benefits, and they have been more resilient to economic downturns than other private sector industries over the past decade. In addition, jobs in the high tech industry have a strong potential for growth."

(g)  The commission also found that the high tech sector employs about one-fourth of United States professionals and about 5 to 6 percent of the total labor force.

(h)  Analysis has shown that highly ranked universities graduate African American and Latino computer science and computer engineering majors at twice the rate that leading technology companies hire them.

(i)  The EEOC study shows that compared to overall private industry, the high tech sector employed a larger share of Whites (63.5 percent to 68.5 percent), Asian Americans (5.8 percent to 14 percent), and a smaller share of African Americans (14.4 percent to 7.4 percent), Hispanics (13.9 percent to 8 percent).

(j)  The study also showed that in the tech sector nationwide, Whites are represented at a higher rate in the executives category, which typically encompasses the highest level jobs in the organization.

(k)  According to a study by the EEOC, fewer than 1 percent of Silicon Valley executives and managers are African American.

(*l*)  According to a report by the Ascend Foundation, Asian Americans were the least likely to be promoted to manager or executive positions in California.

(m)  According to a report by McKinsey and Company, for every 10 percent increase in racial and ethnic diversity on the senior-executive team, earnings before interest and taxes rise 0.8 percent.

(n)  A study by Dalberg Global Development Advisors found that the high tech industry could generate an additional $300 billion to $370 billion each year if the racial or ethnic diversity of tech companies' workforces reflected that of the talent pool.

(o)  In 2018, the California Legislature addressed gender inequity on corporate boards in the state and passed Senate Bill 826. Since the enactment of Senate Bill 826, data shows that out of 511 director seats filled by women in California publicly traded companies, 77.9 percent are White. In comparison, 3.3 percent of female directors hired are Latina, 5.3 percent are African American, and 11.5 percent are Asian.

(p)  Studies have shown that chief executive officers stand to gain from nondiverse boards. Studies have shown that culturally homogenous boards pay chief executive officers more than a culturally diverse board.

(q)  Experts argue that affirmative action plans to increase the representation of women and minorities in historically unrepresented fields and occupations further the legislative goals of the Civil Rights Act of 1964. In the Civil Rights Act of 1964, it is clear that Title VII of the act does all of the following:

(1)  Directly permits the imposition of affirmative action plans to address past discrimination and patterns of discrimination.

(2)  Permits state actors to create affirmative action plans designed to increase representation of women and minorities in job positions in which they are historically underrepresented, so long as such plans are moderate, temporary, and designed and intended to attain a balanced workforce.

(3)  Does not forbid private actors from voluntarily creating action plans to increase representation of women and minorities, so long as those plans are temporary and do not create an absolute bar to White or male employees.

(r)  More racially and gender diverse boards further the goals of the Sarbanes-Oxley Act of 2002, which pushed for more independent boards that decrease the likelihood of corporate fraud.

(s)  Directors that hold numerous board seats exert considerable influence over United States corporations and broader society. As directors gain seats on more boards, they gain influence over the creation of policy in more companies and rise in corporate status amongst the corporate elite, which in turn enhances their influence on the creation of policy.

(t)  Therefore, it is the intent of the Legislature to require, by January 2023, every publicly held corporation in California to achieve diversity on its board of directors by having a minimum of directors from underrepresented communities on its board, as specified in this measure.

92

SEC. 2.   Section 301.3 of the Corporations Code is amended to read:

301.3.   (a)  No later than the close of the 2019 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall have a minimum of one female director on its board. A corporation may increase the number of directors on its board to comply with this section.

(b)  No later than the close of the 2021 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall comply with the following:

(1)  If its number of directors is six or more, the corporation shall have a minimum of three female directors.

(2)  If its number of directors is five, the corporation shall have a minimum of two female directors.

(3)  If its number of directors is four or fewer, the corporation shall have a minimum of one female director.

(c)  No later than July 1, 2019, the Secretary of State shall publish a report on its internet website documenting the number of domestic and foreign corporations whose principal executive offices, according to the corporation's SEC 10-K form, are located in California and who have at least one female director.

(d)  No later than March 1, 2020, and annually thereafter, the Secretary of State shall publish a report on its internet website regarding, at a minimum, information required by subdivision (c) of Section 301.4 and all of the following:

(1)  The number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year.

(2)  The number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year.

(3)  The number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded.

(e)  (1)  The Secretary of State may adopt regulations to implement this section. The Secretary of State may impose fines for violations of this section as follows:

(A)  For failure to timely file board member information with the Secretary of State pursuant to a regulation adopted pursuant to this paragraph, the amount of one hundred thousand dollars ($100,000).

(B)  For a first violation, the amount of one hundred thousand dollars ($100,000).

(C)  For a second or subsequent violation, the amount of three hundred thousand dollars ($300,000).

(2)  For the purposes of this subdivision, each director seat required by this section to be held by a female, which is not held by a female during at least a portion of a calendar year, shall count as a violation.

(3)  For purposes of this subdivision, a female director having held a seat for at least a portion of the year shall not be a violation.

(4)  Fines collected pursuant to this section shall be available, upon appropriation by the Legislature, for use by the Secretary of State to offset the cost of administering this section.

(f)  For purposes of this section, the following definitions apply:

(1)  "Female" means an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth.

(2)  "Publicly held corporation" means a corporation with outstanding shares listed on a major United States stock exchange.

SEC. 3.  Section 301.4 is added to the Corporations Code, to read:

301.4.  (a)  No later than the close of the 2021 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall have a minimum of one director from an underrepresented community on its board. A corporation may increase the number of directors on its board to comply with this section.

(b)  No later than the close of the 2022 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall comply with the following:

(1)  If its number of directors is nine or more, the corporation shall have a minimum of three directors from underrepresented communities.

(2)  If its number of directors is more than four but fewer than nine, the corporation shall have a minimum of two directors from underrepresented communities.

(3)  If its number of directors is four or fewer, the corporation shall have a minimum of one director from an underrepresented community.

(c)  No later than March 1, 2022, and annually thereafter, the Secretary of State shall include in its report required by subdivision (d) of Section 301.3, at a minimum, all of the following:

(1)  The number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year.

(2)  The number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year.

(3)  The number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded.

(d)  (1)  The Secretary of State may adopt regulations to implement this section. The Secretary of State may impose fines for violations of this section as follows:

(A)  For failure to timely file board member information with the Secretary of State pursuant to a regulation adopted pursuant to this paragraph, the amount of one hundred thousand dollars ($100,000).

(B)  For a first violation, as described in paragraph (2), the amount of one hundred thousand dollars ($100,000).

(C)  For a second or subsequent violation, as described in paragraph (2), the amount of three hundred thousand dollars ($300,000).

(2)  For the purposes of this subdivision, both of the following apply:

(A)  Each director seat required by this section to be held by a director from an underrepresented community, which is not held by a director from an underrepresented community during at least a portion of a calendar year, shall count as a violation.

(B)  A director from an underrepresented community having held a seat for at least a portion of the year shall not be a violation.

(3)  Fines collected pursuant to this section shall be available, upon appropriation by the Legislature, for use by the Secretary of State to offset the cost of administering this section.

(e)  For purposes of this section, the following definitions apply:

(1)  "Director from an underrepresented community" means an individual who self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native, or who self-identifies as gay, lesbian, bisexual, or transgender.

(2)  "Publicly held corporation" means a corporation with outstanding shares listed on a major United States stock exchange.

SEC. 4.  Section 2115.6 is added to the Corporations Code, to read:

2115.6.  (a)  Section 301.4 shall apply to a foreign corporation that is a publicly held corporation to the exclusion of the law of the jurisdiction in which the foreign corporation is incorporated.

(b)  For purposes of this section, a "publicly held corporation" means a foreign corporation with outstanding shares listed on a major United States stock exchange.

O